# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | WILL PARDUE, | ) |
| | | ) |
| | Plaintiff, | ) |
| | | ) |
| vs. | | ) Case No. CIV-14-1049-D |
| | | ) |
| (1) | RURAL COMMUNITY | ) *Removed from the District Court of* |
| | INSURANCE COMPANY and | ) *Tillman County, Oklahoma* |
| (2) | HUMBLE INSURANCE AGENCY, | ) *Case No. CJ-2014-0016* |
| | | ) |
| | Defendants. | ) |

---

## RURAL COMMUNITY INSURANCE COMPANY'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
## OR, IN THE ALTERNATIVE,
## TO STAY PROCEEDINGS AND COMPEL ARBITRATION

---

G. David Bryant, OBA No. 1264
Stephen W. Elliott, OBA No. 2685
PHILLIPS MURRAH P.C.
Corporate Tower, 13th Floor
101 North Robinson Avenue
Oklahoma City, OK  73102
(405) 235-4100

Daniel N. Rosenstein
(pro hac vice being submitted)
LEVIN & ROSENSTEIN, P.C.
Suite 110
1395 Piccard Drive, Suite 110
Rockville, MD 20850
(301) 208-1795

### ATTORNEYS FOR DEFENDANT
### RURAL COMMUNITY INSURANCE COMPANY

September 29, 2014

# Table of Contents

I.      INTRODUCTION ..................................................................................................2

        A.      Brief History Of The Federal Crop Insurance Program.........................................2

        B.      Statutory And Regulatory Scheme........................................................................5

        C.      Federal Preemption Of State Regulation..............................................................7

II.     FACTUAL BACKGROUND ...............................................................................9

III.    THE BASIC PROVISION'S ARBITRATION CLAUSE ...............................10

IV.     ARGUMENTS AND AUTHORITIES ..............................................................12

        A.      RMA Has Interpreted The Basic Provisions To Require Arbitration Of Disputes ..
                . ..............................................................................................................................12

        B.      The Federal Arbitration Act Mandates Arbitration. ............................................13

        C.      Courts Compel Arbitration Of Disputes Arising Under Federal Crop Insurance
                Policies. ................................................................................................................15

        D.      The FCIA Preempts State Law Precluding Or Restricting Arbitration Of Crop
                Insurance Disputes. .............................................................................................17

V.      CONCLUSION ...................................................................................................22

## Cases

*Allied- Bruce Terminex Companies, Inc. v. Dobson,*
   513 U.S. 265 (1995) ................................................................................14

*Bullington v. Blakely Crop Hail, Inc.,*
   668 S.E.2d 732 (2008)............................................................................16

*Continental Casualty Company, et al. v. McCall,*
   Cause No. 97,797 (Okla. July 1, 2002) ..................................................20

*Crook v. Fireman's Fund Agribusiness, Inc.,*
   2000 WL 33650721 (W.D.La. Sept. 5, 2007)........................................15

*Doctor's Assocs., Inc. v. Casarotto,*
   517 U.S. 681 (1996) ................................................................................13

*Farmer's Alliance Mut. Ins. Co. v. Poco, LLC,*
   2005 US Dist. LEXIS 44119 (Aug. 23, 2005)........................................16

*Federal Crop Insurance Corporation vs. Merrill,*
   332 U.S. 380 (1947) ................................................................................13

*Flick v. Liberty Mutual Fire Ins. Co.,*
   205 F.3d 386 (9th Cir. 2000) ..................................................................13

*In Re 2000 Sugar Beet Crop Ins. Litigation,*
   228 F.Supp.2d 992 (D.Minn. 2002) .................................................16, 20

*JSB Farms, Inc. v. Fireman's Fund AgriBusiness, Inc.,*
   205 S.W.3d 910 (2006)............................................................................21

*Ledford Farms, Inc. v. Fireman's Fund Ins. Co.,*
   184 F.Supp.2d 1242 (S.D.Fla.2001)........................................................21

*Mastrobuono v. Shearson Lehman Hutton*
   514 U.S. 52 (1995) ..................................................................................13

*Meyer v. Conlon,*
   162 F.3d 1264 (10th Cir. 1998)................................................................18

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*
   460 U.S. 1 (1983) ....................................................................................14

*Nobles v. Rural Community Ins. Services,*
   122 F.Supp.2d 1290 (M.D. Ala. 2000).............................................15, 17

*Sigma Tau Pharms, Inc. v. Schwetz,*
   288 F.3d 141 (4th Cir. 2002) ..................................................................12

*Thomas Jefferson Univ. v. Shalala,*
   512 U.S. 504 (1994) ................................................................................12

*Todd v. United States,*
   995 F.2d 1505 (10th Cir. 1993)..........................................................17, 18

*Weidert v. Producers Agric. Ins. Co.,*
   309 P.3d 435 (2013) ................................................................................16

## Statutes

15 O.S. § 818 ................................................................................................20

15 U.S.C. § 1012 (b) ....................................................................................19

7 U.S.C. § 1502(a) ..........................................................................................3

7 U.S.C. § 1503............................................................................................3

7 U.S.C. § 1506(1) ....................................................................7, 8, 18, 20

7 U.S.C. § 1506(k) ..........................................................................................5

7 U.S.C. § 1508(d) ...............................................................................................4
7 U.S.C. § 1508(e) ...............................................................................................4
7 U.S.C. § 1508(e). ..............................................................................................4
7 U.S.C. § 1508(k)(1)...........................................................................................4
7 U.S.C. § 1508(k)(4)...........................................................................................4
7 U.S.C. §§ 1501, *et seq.* ...................................................................................1
9 U.S.C. § 1, *et seq.* ...........................................................................................2
9 U.S.C. § 2 ........................................................................................................13

**Other Authorities**

H.R. Rep. No. 96-430 (1979) ...........................................................................3, 4
S. Rep. No. 96-254 (1979)................................................................................3, 4

**Regulations**

55 Fed. Reg. at 23067 ..........................................................................................8
55 Fed. Reg. at 23068 ..........................................................................................7
59 Fed. Reg. 42751 ............................................................................................11
62 Fed. Reg. 65130, 65150.................................................................................11
69 Fed. Reg. 48652, 48714.................................................................................11
7 C.F.R. § 400.164 ...............................................................................................5
7 C.F.R. § 400.168(a)...........................................................................................5
7 C.F.R. § 400.168(d)...........................................................................................5
7 C.F.R. § 400.352 .......................................................................................18, 20
7 C.F.R. § 400.352(a)......................................................................................8, 18
7 C.F.R. § 457.101, *et seq.* .................................................................................5
7 C.F.R. § 457.161 ...............................................................................................6
7 C.F.R. § 457.8 .........................................................................6, 18, 19, 22
7 C.F.R. §§ 457.8, *et seq.* .......................................................................5, 9, 10

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | WILL PARDUE, | ) |
| | | ) |
| | Plaintiff, | ) |
| | | ) |
| vs. | | ) Case No. CIV-14-1049-D |
| | | ) |
| (1) | RURAL COMMUNITY | ) *Removed from the District Court of* |
| | INSURANCE COMPANY and | ) *Tillman County, Oklahoma* |
| (2) | HUMBLE INSURANCE AGENCY, | ) *Case No. CJ-2014-0016* |
| | | ) |
| | Defendants. | ) |

## RURAL COMMUNITY INSURANCE COMPANY'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION

Defendant Rural Community Insurance Company ("RCIC"), by and through undersigned counsel, hereby submits the following memorandum of law in support of its Motion to Dismiss or, In the Alternative, to Compel Arbitration and Stay Proceedings [Doc. No. 6]:

RCIC, through its managing general agent, Rural Community Insurance Services ("RCIS"), sells and services federally reinsured Multiple Peril Crop Insurance ("MPCI") policies pursuant to the Federal Crop Insurance Act, 7 U.S.C. §§ 1501, *et seq.* (the "FCIA"), the regulations promulgated by the Federal Crop Insurance Corporation ("FCIC") and the Standard Reinsurance Agreement between RCIC and FCIC. RCIC is an Approved Insurance Provider ("AIP") within the meaning of the FCIA. For the 2014 crop year, William Pardue ("Pardue") was an RCIC policyholder insuring various crops in Tillman County, Oklahoma.

1

This action arises out of a dispute stemming from RCIS's determination that Pardue did not comply with the requirements of the Common Crop Insurance Policy and, accordingly, was not entitled to coverage on his canola crop for the 2014 crop year. RCIC now moves to dismiss the litigation or, in the alternative, compel arbitration and stay all court proceedings pending the completion of arbitration.

The MPCI policy relevant to this case contains an arbitration agreement that is enforceable pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.,* and the claims asserted in this action involve a dispute within the scope of this agreement. Further, to the extent that Oklahoma law precludes arbitration, such law is expressly preempted by the FCIA, federal regulations promulgated by the FCIC and the MPCI Policy.

> [T]he Oklahoma Supreme Court [and the lower courts of Oklahoma] must abide by the FAA, which is 'the supreme Law of the Land,' U.S. Const., Art. VI, cl. 2, and by the opinions of this [the United States Supreme] Court interpreting that law. 'It is [the United States Supreme] Court's responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law.'   Rivers v. Roadway Express, Inc., 511 U.S. 298, 312, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994). Our cases hold that the FAA forecloses precisely this type of 'judicial hostility towards arbitration.' AT & T Mobility LLC v. Concepcion, 563 U.S. ——, ——, 131 S.Ct. 1740 1747, 179 L.Ed.2d 742 (2011).

Nitro-Lift Techs., L.L.C. v. Howard, 586 U.S. ___, 133 S.Ct. 500, 184 L.Ed.2d 328

## I.   INTRODUCTION

### A.   Brief History Of The Federal Crop Insurance Program

Congress enacted the FCIA "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing

the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502(a). "[R]espond[ing] to the serious need by farmers for protection against losses," H.R. Rep. No. 96-430 at 26 (1979), the FCIA established the FCIC as an agency of and within the United States Department of Agriculture ("USDA"), 7 U.S.C. § 1503, to administer and regulate a comprehensive all- risk federal crop insurance program. *Id*. §§ 1503, 1507(c)(2). Congressional action was deemed necessary "because of the magnitude of the problem," H.R. Rep. No. 96-430 at 26, and because "[n]umerous attempts by private industry to write all-risk policies [had] failed." S. Rep. No. 96-254 at 0 (1979).

In 1980, Congress sought to change all that by substantially "expand[ing] and revis[ing] the crop insurance program." H.R. Rep. No. 96-430 at 6. Once again, Congress emphasized "[t]he seriousness of the need of providing financial protection to farmers." *Id.* at 9. Congress recognized, however, that "[w]idespread participation by farmers is critical to the success of the federal crop insurance program." S. Rep. No. 96-254 at 7. As the Senate Committee report explained: "If an insufficient proportion of those who need protection do not voluntarily purchase insurance and consequently face financial ruin after a catastrophic crop loss, the program will not fulfill its principal objective of providing the Nation's farmers protection against natural disasters." *Id*.

Congress took several steps to ensure increased farmer participation. Among other things, Congress lifted restrictions on the availability of federal crop insurance and expanded the program to "all counties and all crops." *Id*. Congress also provided for federal cost-sharing by directing the FCIC to pay a portion of farmers' premium costs.

3

*See* 7 U.S.C. § 1508(e). Most significantly, however, Congress permitted the FCIC "to use private companies in administering the program." S. Rep. No. 96-254 at 10.

At the time, federal crop insurance was sold primarily through FCIC employees. H.R. Rep. No. 96-430 at 12. Congress recognized, however, that if its goal of maximum participation was to be achieved, "Federal crop insurance [would] have to be aggressively marketed." *Id.* To accomplish that task, the FCIC would have to draw on the resources of the private sector: "[T]he sales talents and experience of private sector commissioned agents and insurance companies . . . are essential to fulfilling the goal of nationwide, generally accepted all-risk insurance protection." *Id.* at 12-13. In essence, private companies were substituted for the Federal Government employees that previously provided crop insurance.

As noted, "attempts by private industry to write all-risk policies [had] failed," S. Rep. No. 96-254 at 9, because the "uncertainties, and risks, and losses [were] too great." H.R. Rep. No. 96-430 at 13. Therefore, Congress recognized, "if private industry is to offer all-risk crop insurance, Federal reinsurance is necessary to cover the risk of catastrophic losses." *Id.* at 14. To encourage the participation of AIP's, FCIC reinsures indemnities paid by AIP's "to the maximum extent practicable." 7 U.S.C. § 1508(k)(1). In addition, FCIC pays AIPs an Administrative and Operating Subsidy that compensates them for a portion of the program delivery costs. *Id.* at § 1508(k)(4). FCIC also determines the appropriate premium rates for all plans of insurance and, to ease the financial burden of producers, subsidizes a portion of the premium to be paid by producers. *Id.* at § 1508(d) and (e).

The FCIC makes reinsurance available to approved providers under the aforementioned SRA, 7 C.F.R. § 400.164, and AIPs must "follow all applicable Corporation procedures in [their] administration of the crop insurance policies reinsured." *Id.* § 400.168(a). They also are required to "utilize only loss adjustment procedures and methods that are approved by the Corporation." *Id.* § 400.168(d) (emphasis added).

### B.    Statutory And Regulatory Scheme

To effectuate the purposes of the FCIA, Congress gave the FCIC broad powers, including all "such powers as may be necessary or appropriate for the exercise of the powers [therein] specifically conferred upon the Corporation and all such incidental powers as are customary in corporations generally."  7 U.S.C. § 1506(k).  Among the powers specifically conferred upon the FCIC is the authority "to issue such regulations as are necessary to carry out [the Act]."

With a few exceptions, FCIC publishes the MPCI policies as regulations.  *See* 7 C.F.R. §§ 457.8, *et seq.*  An MPCI policy generally consists of three separate policies that together establish the terms and conditions of eligibility and coverage. With respect to the Pardue's coverage, the umbrella policy is the Common Crop Insurance Policy ("Basic Provisions"), which is published as a federal regulation and provides general terms and conditions applicable to most commodities insured by FCIC.  *See* 7 C.F.R. § 457.8.  (Exhibit "A")  The second component of an MPCI policy is the so-called "crop provisions" that more narrowly focus the coverage and establish the insuring conditions on a crop-by-crop basis.  The crop provisions also are published as federal regulation. *See* 7 C.F.R. § 457.101, *et seq.*, and the Canola and Rapeseed Crop Insurance Provisions are

5

published at 7 C.F.R. § 457.161.  (Exhibit "B")  The final elements of the MPCI policy are the actuarial documents, including the Special Provisions of Insurance ("SPOI"), that FCIC issues annually.  The SPOI provides additional terms, conditions and exclusions by state, crop, county, and plan of insurance.  The definition of the term "policy" set forth in the Basic Provisions incorporates by reference "all regulations published in 7 C.F.R. Chapter IV."

The terms and conditions of the various MPCI policies "may not be waived or varied in any way." 7 C.F.R. § 457.8 (Preamble).  The Basic Provisions are "reinsured by the [FCIC] under the provisions of the Act," and that "all provisions of the policy and rights and responsibilities of the parties are specifically subject to the Act." *Id.*  Each of the terms of a federally-reinsured crop insurance policy is, therefore, a matter of substantive federal law.

The Risk Management Agency ("RMA")[1] issues the procedures applicable to the crop insurance program, which include handbooks, Manager Bulletins and Informational Memoranda.  The policy's Preamble states the company "will use the procedures (handbooks, manuals, memoranda and bulletins), as issued by the FCIC and published on the RMA website . . . in the administration of this policy, including the adjustment of any loss or claim submitted hereunder."  Thus, the Basic Provisions incorporates by reference

---

[1]RMA supervises FCIC and has authority over the delivery of all programs authorized by the Act.  7 U.S.C. § 6933(b).  To this end, RMA provides the personnel and other support to implement and carry out the policies and procedures of the FCIC. Although legally distinct agencies, RMA and FCIC operate as one entity.  The terms "FCIC" and "RMA" may be used interchangeably throughout the remainder of this Memorandum.

all procedures published by RMA, and informs the policyholder that the AIP will apply

those procedures in the servicing of the insurance policy and the adjusting of any claim

for loss.  In sum, the Federal Government controls all aspects of the program.

### C.      Federal Preemption Of State Regulation

Congress specifically provided for the preemption of state regulation of the federal

crop insurance program:

> State and local laws or rules shall not apply to contracts, agreements, or
> regulations of the Corporation or the parties thereto to the extent that such
> contracts, agreements, or regulations provide that such laws or rules shall
> not apply, or to the extent that such laws or rules are inconsistent with such
> contracts, agreements, or regulations.

7 U.S.C. § 1506(1).  As the FCIC has made clear, this statutory provision, in addition to

preempting state laws "inconsistent" with FCIA or the FCIC's regulations, or agreements,

also authorizes the FCIC "to issue regulations and contracts that generally preempt the

application of state law to the crop insurance industry."  55 Fed. Reg. at 23068.

By the early 1990s, Congress' objective of ensuring a uniform system of federal

crop insurance faced a serious threat. Notwithstanding that "[s]tate statutes and

regulations of the FCIC program [had] always been specifically preempted by the [FCIA]

and the Supremacy Clause," *id.* at 23066, many states began to interfere with the FCIC's

administration and regulation of the program. For instance, the FCIC encountered

"frequent occurrences" of "State agencies requiring changes in federal insurance policies

to the extent that neighboring policyholders receive[d] differing levels of federal

assistance depending on whether they obtain[ed] their policy from FCIC or from a

reinsured company, or whether they live[d] in differing States." *Id.* Significantly, many

7

state courts had entered judgments against AIPs "under State statutory or common law providing for the payment of punitive damages or . . . some multiplication of damages under 'good faith' or some other State provision" simply for adhering to the "requirements of the FCIC Act or procedures and policy provisions mandated by the FCIC." *Id.* at 23066-67. Because "[a]ppropriations by the Congress are to be used for their intended purpose," they cannot be used "to pay for judgments which may or may not bear any relation to the loss which has been incurred." *Id.* at 23067. Yet "reinsured companies cannot stand the risk of exorbitant damages imposed because of that company's following the FCIC mandated terms and procedures." *Id.* As a result, the "continuation of the delivery of the program through . . . such companies" was in jeopardy." *Id.*

Pursuant to the agency's congressionally delegated authority under 7 U.S.C. § 1506(1), the FCIC responded to these and other problems by promulgating a regulation clarifying the FCIA' s broad preemption of state law:

> No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions **that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part** unless such authority is specifically authorized by this part or by the Corporation.

7 C.F.R. § 400.352(a) (emphasis added).

As the FCIC explained in its rulemaking, "[t]he procedures, rules, and terms of [federal crop] insurance are to be established by FCIC." 55 Fed. Reg. at 23067. Although the FCIC "remains open to suggestions from any person, including State insurance regulatory bodies, on ways to improve the program including changes in policy terms or conditions," it is nevertheless the FCIC "which must determine the necessity and scope of

such changes." *Id.* As the agency emphasized, the terms and conditions of federal crop insurance "cannot be enforced in a patchwork pattern." *Id.* Rather, federal law must control "not only the contractual relationship with its contractors," but also "the relationship such contractors have with the insureds." *Id.* at 23068. Otherwise, the FCIC would not be able "to carry out its Congressional mandate to establish crop insurance uniformly throughout the United States." *Id.* at 23067-68. Hence, the determination of liability with respect to the sale, issuance, or service of a federal crop insurance policy is governed exclusively by the FCIA and the regulations, policies and procedures issued or approved by FCIC.

## II.   FACTUAL BACKGROUND

Canola is not an insurable crop in Tillman County, Oklahoma except through a Written Agreement.  The Basic Provisions defines "Written Agreement" to mean: "A document that alters designated terms of a policy as authorized under these Basic Provisions, the Crop Provisions, or the Special Provisions for the insured crop (see section 18)."  7 C.F.R. § 457.8 sec. 1 (Definitions).  Section 18 of the Basic Provisions, captioned "Written Agreements," establishes the guidelines governing the request, approval and issuance of Written Agreements.   Section 18(a) requires requests for Written Agreements to be submitted by the applicable Sales Closing Date, and section 18(g)(1) provides that a request will be rejected if submitted after the Sales Closing Date. The Sales Closing Date for Tillman County applicable to the 2014 crop year was August 31, 2013, as set forth in the SPOI issued by RMA.

9

Because a Written Agreement is effective only for the crop year for which it is approved, a policyholder must request a Written Agreement annually.  RCIS did not receive a signed request for a Written Agreement from Pardue by August 31st and, therefore, determined that Pardue's canola acreage was not eligible for coverage for the 2014 crop year.

## III.   THE BASIC PROVISION'S ARBITRATION CLAUSE

The Basic Provisions contain a dispute resolution clause, which provides in pertinent part as follows:

> 20.   Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.
>
> (a) If you and we[2] fail to agree on **any determination made by us** except those specified in 20(d), the disagreement may be resolved through mediation in accordance with section 20(g).  If resolution cannot be reached through mediation, or you and we do not agree to mediation, **the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA)** except as provided in sections 20(c) and (f) . . . .
>
> *          *          *
>
> (b)  Regardless of whether mediation is elected:
> (1)  The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;
> (2)  **If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review**;

7 C.F.R. § 457.8 sec. 20 (emphasis added). (Exhibit A").

---

[2] The policy preamble states:  "Throughout this policy, "you" and "your" refer to the named insured shown on the accepted application and "we," "us," and "our" refer to the insurance company providing insurance.

FCIC established the arbitration clause by a Final Rule dated August 19, 1994. 59 Fed. Reg. 42751 (Aug. 19, 1994). The original version of the clause, which was effective for the 1995 through 2004 crop years, provided for arbitration of disputes regarding the insurer's "factual determinations." *Id.* In 1997, FCIC considered and rejected a proposal to amend the arbitration provision, concluding that "arbitration by the rules of the AAA has been a satisfactory and desirable solution to policy disputes . . . The [policy] provisions clearly state that a disagreement on any factual determination will be resolved by arbitration." 62 Fed. Reg. 65130, 65150 (Dec. 10, 1997). In 2004, FCIC contemplated deleting the arbitration requirement from the policy. *See* 69 Fed. Reg. 48652, 48714 (Aug. 10, 2004). However, "FCIC determined that elimination of arbitration was not in the best interests of the producer or the insurance provider and [it] elected to revise the arbitration provisions." *Id.* Instead of eliminating arbitration, the 2004 revisions implemented the current language that expands the scope of disputes subject to arbitration from "factual determinations" to "any determination."

The claims asserted in the Petition clearly involve disputes within the scope of the Basic Provision's arbitration provision. More specifically, Pardue disputes RCIS's determination that he did not comply with the policy's requirements related to requests for written agreement and, as a result, his canola crop was not entitled to coverage for the 2012 crop year. (Exhibits "C" and "D") It is noteworthy, that both of RCIS's letters to Pardue advised him of the policy's mandatory arbitration provision and provided contact information for the AAA to facilitate the initiation of arbitration.

11

In sum, in accordance with the law discussed herein, RCIC is entitled to have such disputes dismissed or, in the alternative, remanded to binding arbitration and the present litigation stayed pending the completion of arbitration.

## IV.    ARGUMENTS AND AUTHORITIES

### A.    RMA Has Interpreted The Basic Provisions To Require Arbitration Of Disputes.

In Final Agency Determination: FAD-013, RMA explained that arbitration is a condition precedent to litigation, stating:  "**Arbitration must be completed prior to the producer's bringing any suit in a court**."[3]  An agency's interpretation of its own regulation is entitled to "substantial deference . . . unless it is plainly erroneous or inconsistent with the regulation." *Sigma Tau Pharms, Inc. v. Schwetz*, 288 F.3d 141, 146 (4th Cir. 2002).  Moreover, deference is especially appropriate if "the regulation concerns a complex highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant experience and entail the exercise of judgment grounded in policy concerns." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (citations omitted).  Because RMA's interpretation of the insurance policies necessitated subject-specific expertise and arose in the context of a broad regulatory scheme, FAD-113 is entitled to substantial deference.  As the Supreme Court has stated, "'the terms and conditions' upon which valid governmental insurance can be had must be defined by the agency acting for the Government." *Federal Crop*

---

[3]FAD-013 interprets section 25 of the insurance policy in effect prior to 2005.  Nonetheless, FAD-013 manifest RMA's intent for producers to arbitrate disputes prior to commencing litigation in court.

*Insurance Corporation vs. Merrill*, 332 U.S. 380, 383 (1947). *See also Flick v. Liberty Mutual Fire Ins. Co.*, 205 F.3d 386, 390 (9th Cir. 2000) *citing Merrill* (federal law mandates that strict compliance with terms of a federal insurance policy).

**B.     The Federal Arbitration Act Mandates Arbitration.**

The enforcement of the arbitration clause in a federal crop insurance policy is mandated by the FAA, which provides, in pertinent part, that:

> [a] written provision in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction... shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.

9 U.S.C. § 2. Thus, the FAA requires enforcement of an arbitration agreement upon proof: (1) that a written agreement to arbitrate exists and (2) that the written agreement is contained within a contract evidencing a transaction involving "commerce." Once a transaction in litigation is found to meet the FAA standards (i.e. 'involve commerce), courts cannot apply state law that would invalidate the arbitration agreement unless the state law is applicable to all contracts generally. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686-87 (1996).

In *Mastrobuono v. Shearson Lehman Hutton,* 514 U.S. 52 (1995), the United States Supreme Court explained:

> [T]he FAA not only 'declared a national policy favoring arbitration,' but actually withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'

*Mastrobuono,* 514 U.S. at 56. "The basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." *Allied- Bruce Terminex Companies, Inc. v. Dobson,* 513 U.S. 265, 270 (1995). The United States Supreme Court has interpreted the FAA expansively, decreeing that it is to reach all transactions or contracts that fall within the broad scope of Congressional powers relating to interstate commerce. *Id.* at 273. The FAA applies to all transactions that "in fact" involve interstate commerce. *Id.* at 281. Thus, rather than examining the parties' contemplation of interstate activity, a court considering whether there is a contract involving interstate commerce should simply look to whether the transaction involved interstate commerce "in fact." *Id.* Furthermore, any doubt concerning the scope of the issues covered by the arbitration agreement should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24-25 (1983).

It is clear that each of the contracts at issue involves interstate commerce in fact. As noted in the Petition, Pardue, who is a citizen of Oklahoma, applied for federal crop insurance policies that were administered by RCIC. RCIC is domiciled in the State of Minnesota. Additionally, the policies were reinsured by the FCIC, a governmental corporation of USDA in Washington, D.C. It is likewise clear that the subject arbitration clause, which covers a failure to agree on "determinations," encompasses the issues presented by this litigation. That is, the claims in this case directly challenge RCIC's determination that no coverage existed for Pardue's 2014 canola crop.

14

## C.    Courts Compel Arbitration Of Disputes Arising Under Federal Crop Insurance Policies.

As mentioned previously, the FCIC amended the arbitration requirement in the Basic Provisions in 2004, these changes being made effective for 2005 and subsequent crop years.   The FCIC expanded the arbitration requirement to include all "determinations" made by a reinsured company; previously, the policy had mandated arbitration for disagreements only as to "factual determinations." However, even in applying the former (more restrictive) policy language, courts across the country have broadly construed the arbitration provision to encompass all decisions of reinsured companies relating to coverage and/or indemnity.   For instance, in *Nobles v. Rural Community Ins. Services,* 122 F.Supp.2d 1290 (M.D. Ala. 2000), the district court held that the reinsured company's decision to disallow coverage and deny indemnity, based upon a requirement that land which had not been farmed in one of the past three crop years was uninsurable, was a factual determination that was subject to arbitration.   *Id.* at 1296.

The Western District of Louisiana also examined this question under the former, more restrictive version of the policy. In *Crook v. Fireman's Fund Agribusiness, Inc.,* 2000 WL 33650721 (W.D.La. Sept. 5, 2007), the court compelled arbitration of a dispute arising under a federal crop insurance policy. *Crook,* 2000 WL at *1.   In *Crook Farms,* the insured disagreed with the insurer's determination as to the amount of indemnity to be paid on a claim. *Id.*   The court nevertheless compelled arbitration, stating: "Resolution of this action will require that 'factual determinations' be made, and, under the terms of the

policy, factual disputes must be resolved in arbitration." *Id.*   Similarly, in *In Re 2000 Sugar Beet Crop Ins. Litigation,* 228 F.Supp.2d 992 (D.Minn. 2002), the policyholders attempted to avoid arbitration by arguing that the insurer had made no factual finding but had simply denied coverage. The policyholders also asserted that the matters in dispute involved only the legal effect of certain facts, rather than "factual determinations." *Id.* at 996. The court rejected these arguments and compelled arbitration. *Id.*   The District Court in Washington's Eastern District reached the same conclusion, holding that its decision to enforce of section 20's arbitration provision was "consistent" with the conclusions of other Federal courts.   *Farmer's Alliance Mut. Ins. Co. v. Poco, LLC*, 2005 US Dist. LEXIS 44119 *8 (Aug. 23, 2005).

State courts also enforce the Basic Provisions' arbitration clause.   The Georgia Court of Appeals recognized the enforceability of the arbitration provision of a federal crop insurance contract in *Bullington v. Blakely Crop Hail, Inc.,* 668 S.E.2d 732 (2008). There, the court held that the applicable federal regulations and federal crop policy required the plaintiff to submit the issues relating to its peanut claims to arbitration. *Id.* at 736.   Similarly, the Washington Supreme Court, in an *en banc* decision, relied on the FAA in enforcing section 20 of the Basic Provisions.   *Weidert v. Producers Agric. Ins. Co.*, 309 P.3d 435, 436-37 (2013).

These cases demonstrate that, under both the former, more restrictive, arbitration clause, and the current, less restrictive clause states, federal and state courts have uniformly held that *any* determinations which are the subject of a disagreement between the insured and the policy issuing company must be settled through arbitration. Thus,

Pardue's dispute of RCIC's determination regarding coverage must be submitted to arbitration.

**D.      The FCIA Preempts State Law Precluding Or Restricting Arbitration Of Crop Insurance Disputes.**

RCIC would further show that, to the extent that the arbitration of insurance disputes is precluded by Oklahoma law, such law is preempted by the FCIA and its attendant regulations. The FCIA was enacted in 1938 and expanded and strengthened through amendments in 1980, with the goal of resuscitating and preserving agriculture and assuring its continued strength in the national economy. The FCIA has a stated purpose of promoting "the national welfare by improving the economic stability of agriculture through a system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." *Todd v. United States,* 995 F.2d 1505, 1502 (10th Cir. 1993).

So that it may comply with this Congressional mandate, the FCIC has been given "such powers as may be necessary or appropriate for the exercise of the powers herein specifically conferred upon the [FCIC] and all such incidental powers as are customary in corporations generally." *Id.* at 1507 (citing 7 U.S.C. § 1506(j)). Consequently, the FCIC is authorized to issue the regulations necessary to carry out the provisions of the FCIA. *Id.* at 1507-08 (citing 7 U.S.C. § 1516(b)).

Pursuant to its rulemaking powers, the FCIC has dictated the terms of insurance contracts issued pursuant to the FCIA, including MPCI policies. *Nobles,* 122 F.Supp.2d at 1294 (citing 7 C.F.R. § 457.7). Regulations prescribing the form of crop insurance

17

policies issued pursuant to the FCIA have the full force and effect of federal statute, and reinsured companies have no right to waive or vary the policy provisions. *Id. Meyer v. Conlon,* 162 F.3d 1264, 1266 (10th Cir. 1998); *Todd,* 995 F.2d at 1509. As mandated by the FCIC, the Basic Provisions contain the subject arbitration provision. *See* 7 C.F.R. § 457.8, section 20.

In enacting the FCIA, Congress specifically limited the application of state law to FCIC contracts, rules, and regulations that are inconsistent with such laws and specifically authorized the FCIC to issue regulations providing for preemption of state law, stating:

> The Corporation may enter into and carry out contracts or agreements, and issue regulations, necessary in the conduct of its business, as determined by the Board. State and local laws or rules shall not apply to contracts, agreements, or regulations of the Corporation or the parties thereto to the extent that such contracts, agreements, or regulations provided that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations.

7 U.S.C. § 1506(1).

The provisions of 7 U.S.C. § 1506(1) concerning preemption have been extended by federal regulation to the FCIC's reinsurance program The preemption of contrary state and local laws is explicitly set forth at 7 C.F.R. § 400.352, which states:

> (a) No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decision that directly or indirectly affect or govern agreements, contracts, or action authorized by this part unless such authority is specifically authorized by this part or by the Corporation.

Likewise, section 31 of the Basic Provisions, captioned "Applicability of State and Local Statutes," mirrors section 1506(l) and section 400.352(a) and provides:

18

> If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. **State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy**.

7 C.F.R. § 457.8 sec. 31 (emphasis added). Therefore, if any Oklahoma law or regulation is inconsistent with or contrary to the arbitration provision contained in section 20 of the federally-reinsured MPCI policy, such state laws and regulations are preempted by federal law.

Furthermore, any portion of the Oklahoma's code that invalidate arbitration provisions in an insurance contract is not enforceable pursuant to the McCarran-Ferguson Act, a reverse preemption statute.[4] The McCarran-Ferguson Act permits a state law to preempt a federal statute only if:

1. the federal statute does not specifically relate to the "business of insurance,"
2. the state law was enacted for the "purpose of regulating the business of insurance," and
3. the federal statute operates to "invalidate, impair, or supersede" the state law.

15 U.S.C. § 1012 (b).  Clearly, the provisions of the FCIA providing for the delivery of a nationwide crop insurance program specifically relate to the business of insurance. Thus, the federal crop insurance program, as set forth in the FCIA and attendant regulations, falls within the exception to McCarran-Ferguson reverse preemption. As controlling federal law, the arbitration provision in question is valid and enforceable.

---

[4]Reverse preemption is so named because the federal law is actually being preempted by state law.  This occurs because the McCarran-Ferguson Act specifically gives power to the states with regard to the business of insurance.

19

Pardue's disregard for the arbitration clause of the Basic Provisions is inconsistent with prior decisions by Oklahoma courts.   For example, in *Continental Casualty Company, et al. v. McCall,* Cause No. 97,797 (Okla. July 1, 2002), a mandamus proceeding, the Oklahoma Supreme Court recognized that both "7 U.S.C. § 1506(1) and C.F.R. § 400.352 specifically provide that state and local laws shall not apply to crop insurance contracts to the extent that such laws or rules are inconsistent with the insurance policies." The Oklahoma court noted that 15 O.S. § 818, which precludes enforcement under the Oklahoma Uniform Arbitration Act of arbitration clauses contained in insurance contracts, is inconsistent with the MPCI arbitration provision. The court found that 15 O.S. § 818 was preempted and, thus, ordered enforcement of the arbitration provision in accordance with the FAA.

In *2000 Sugar Beet Crop Ins. Litigation, supra*, the Minnesota federal district court expressly held that the federal crop insurance policy's arbitration provision is exempt from the reverse preemption of the McCarran-Ferguson Act. *2000 Sugar Beet Crop Ins. Litigation, supra,* at 996. That case involved a Minnesota statute which precluded enforcement of arbitration provisions in insurance contracts.   *Id.* Finding federal law to be controlling, the court held:

> The court finds it most unlikely that when Congress created the federal crop insurance, specifically intending to provide a uniform and accessible system of farmer protection, it also intended to allow fifty states to administer that program according to fifty different state insurance regulatory schemes. Because Congressional statutes specifically relating to the business of insurance supersede state law, the FAA and other federal laws are applicable. The FCIC is to be construed according to the FAA and federal law not Minnesota law or any other state law.

*Id.* at 997.

Similarly, the Southern District of Florida in *Ledford Farms, Inc. v. Fireman's Fund Ins. Co.,* 184 F.Supp.2d 1242 (S.D.Fla.2001), granted a motion to compel arbitration, rejecting the plaintiff's assertion that the decision by the reinsured company to deny indemnity based upon a policy exclusion was not a factual determination. The court noted:

> Ledford asserts that the MPCI policy does not define "practical to replant" and, thus, this "vague and ambiguous" exclusionary term cannot be construed against coverage Ledford's argument is unavailing for at least two reasons. First, ... the policy does, in fact, define "practical to replant." Second, Ledford's argument is an apparent attempt to convert Fireman's Fund's factual determination—that it was practical for Ledford to replant its bean crop—into a legal determination which would fall outside the scope of the arbitration clause. The fact that the arbitrator must read and interpret the policy definition of "practical to replant" does not transform the determination of Fireman's Fund into a legal determination.

*Id.* at 1245. *See also JSB Farms, Inc. v. Fireman's Fund AgriBusiness, Inc.*, 205 S.W.3d 910, 912-13 (2006) (relying on *In re Sugar Beet Litigation* and *Ledford*, the Missouri appellate court held that arbitration agreement should be enforced).

In sum, any suggestion by the Pardue that Oklahoma law prohibits enforcement of the arbitration provision is without merit. Federal law mandates that state law may not vary the provisions of the federal crop insurance policy, which includes a clear directive that disputes regarding any determinations made by RCIC are to be arbitrated. Any provision of Oklahoma law which does not allow for arbitration herein is preempted and unenforceable.

## V.    CONCLUSION

Through the filing of this action, Pardue has disputed RCIC's determination that, under the terms and conditions of a federally-reinsurance MPCI policy, Pardue was not eligible for coverage on his canola crop for the 2014 crop year. Pursuant to the Basic Provisions, which is published at 7 C.F.R. § 457.8, any dispute regarding a determination by the insurer must be resolved through arbitration. Because the subject MPCI policy is a contract involving interstate commerce, the arbitration provision is valid and enforceable pursuant to the FAA. Additionally, any Oklahoma law precluding the enforcement of arbitration agreements contained within policies of insurance is preempted.

WHEREFORE, defendant Rural Community Insurance Company respectfully moves this Court to dismiss this action or, in the alternative, to compel arbitration and stay this action in its entirety pending completion of arbitration.

Respectfully submitted,

/s/ G. David Bryant
G. David Bryant, OBA No. 1264
Stephen W. Elliott, OBA No. 2685
PHILLIPS MURRAH P.C.
Corporate Tower, 13th Floor
101 North Robinson Avenue
Oklahoma City, OK  73102
(405) 235-4100
(405) 235-4133
gdbryant@phillipsmurrah.com
swelliott@phillipsmurrah.com

and

Daniel N. Rosenstein
(pro hac vice being submitted)
LEVIN & ROSENSTEIN, P.C.
1395 Piccard Drive, Suite 110
Rockville, MD 20850
(301) 208-1795

ATTORNEYS FOR DEFENDANT
RURAL COMMUNITY INSURANCE
COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September, 2014, I electronically transmitted the above and foregoing to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

James B. Buxton, II
jim@buxtonlawgroup.com
cindy@buxtonlawgroup.com

Seth D. Coldiron
scoldiron@piercecouch.com
kguillet@piercecouch.com

Stephen L. Olson
solson@piercecouch.com
sbentley@piercecouch.com

/s/ G. David Bryant
G. David Bryant, OBA No. 1264